May it please the court, my name is David Tromdo and I represent the petitioner here in this court. As your honors are aware, the issues at hand are several, but there are two main ones that I'd like to begin with. And the first one is whether or not the immigration judge here erred in not adjudicating the hardship waiver that was requested by the petitioner. As the court is aware, there is no dispute by the government that the immigration judge here erred and did not adjudicate the hardship waiver. What the government does claim is that five years later, when the Board of Immigration Appeals reviewed the immigration judge's decision, they did agree with the petitioner that there was an error, but they claimed they cured it. But five years later, the hardship waiver looks at a person's life, their ties to the community, what they have done, whether they're married or not, whether they own property, and those sort of issues. What the board did was five years later, they looked at a snapshot or closed record of what had happened previously during the 11 years of a petitioner's life in this country. And our argument is that the board couldn't have cured that. What they should have done is sent the case back to the immigration judge for further proceedings and to take testimony specifically about that waiver that she paid for, that she requested. If they found error, it would be a second guess for us here in 2003 to look back at the board's decision that was a year ago and say that the five years of the petitioner's life would have no bearing on the hardship waiver. The hardship waiver is adjudicated based on, and notwithstanding, any other issues that she may have had with her claim. We know she's a citizen from Iran. We know that she has testified before the immigration court that she was raped and she was beaten because she attended a Western-style party. Counsel, doesn't a lot of this depend on her credibility, and isn't the heart of the issue the adverse credibility finding? Your Honor, I think it is tied into that. The crux of this case is whether or not Mr. Shuman, the petitioner's ex-husband, is more believable than petitioned. Well, it strikes me as an unusual credibility case because most of the time we have immigration cases in which it's not necessarily correct that anyone is lying. I mean, someone described something that happened and maybe it happened or maybe it didn't. But in this case, it's clear that somebody was lying because your client and her ex-husband told completely opposite stories about some of the same events. And where it's clear that somebody was lying, why should we overturn the determination of the person who had these folks in front of them and picked who they thought was more believable? Because I think the court disregarded certain testimony and certain evidence that was before it. For example, this case really began, and I asked the court to look at the administrative record 473, where there's a series of letters that Mr. Shuman sent to petitioners. There's an interesting excerpt from it. In one of the letters, after he served with a divorce petition by petitioner, he says, this will cost you, and it didn't. Well, he's clearly angry, but that doesn't make him a liar. I mean, they both have a motive. Her motive is to stay in this country, and his motive is to get back at her for whatever reason he's mad at her. So they both have motives. I guess I just don't see that we have the authority to say, well, we think his motive was stronger than her motive, and therefore we'll undo what the fact finder did. But, Your Honor, if even we put the motives aside and we just look at the record, he claimed that she never told him about the rape incident or whether she had any fear of going to Iran for a rape incident. It's clearly in the record, in Mr. Record 409 and 410, but he, under cross-examination, finally acknowledges that she told him that she was afraid of being raped if she were returned to Iran, not Turkey, but being raped by a public official. Now, in the immigration judge's decision, there's no mention of that. The judge's decision sticks to his version and his analysis, and that Mr. Truman was never told. Petitioner had testified that she told him everything, and that Mr. Truman, in response, said, well, I was never told. But under cross-examination, he acknowledged, and that's the crux of the case. I mean, her case is based on being raped in Iran. Now, the court says, I don't find you credible, so this incident didn't happen, because your ex-husband has come in and said you didn't discuss that matter with him, and that your marriage to him was a sham marriage. She was the one who filed for the solution. And at the inception of the marriage, we have to keep in mind, she came here on a fiancé visa. He procured that for her, she came here, they courted, and they decided to get married. Once they married, she saw behavior that was not acceptable. She didn't want to be married to someone who was using illegal drugs and was an alcoholic. That was the basis of her leaving. If the court looks at the inception and the intention of the party, the inception of the marriage, they see that there was good faith. Yet the court had no regard for that. The court concentrated on the testimony of an angry former spouse. In some of these cases, the law requires us to accept what the agency decides unless the evidence compels the contrary conclusion. And so if the immigration judge chooses to believe the husband and disbelieve her, can we say that there's no substantial evidence supporting the decision and that the evidence compels us to decide in her favor? Well, Your Honor, it can be noticed that when you look at the judge's decision, his credibility finding has to be supported by substantial evidence. When you have just the two pieces of evidence that I cited, it simply doesn't make sense that he would make that sort of credibility finding when Mr. Shuman finally agrees that the rape incident was agreed on. You're saying his credibility determination was based solely on a statement or finding, a statement that the husband never was told about the rape incident? I think that was a very important factor in the immigration judge's decision. Was it the only factor? It wasn't the only factor. I think it was tied into testimony given by the ex-husband about his relationship with the petitioner, so it was tied in. But it was a he said and she said. When he made the analysis of the credibility of the petitioner versus the ex-husband, he was referring to her pauses and thinking about answering. Well, Your Honor, her life was in the balance, and she's the one being removed from the country, not the ex-husband. He was already divorced. He didn't have any financial obligation anymore, but he did have one motive. We talked about motive, and the motive was he said this will cost you, and what's a greater cost to his ex-wife is to get her removed from the country, and he did whatever he could to do that. The government never came forward with evidence saying this rape didn't occur. We have evidence that shows it didn't occur. That's why she's lying. More than that, she said that she was raped in the hospital, and her aunt says she was raped in the Khomeini headquarters. You had a contradiction there, didn't you, Hans? But, Your Honor, she... That's one of many. When you stop to think, sir, that pages 28 to 33 of the opinion, and that's a long portion, discuss the weighing of credibility, and so we have a situation where the AOJ was concerned about the credibility, and he spent a long time, many pages, explaining why he credited some testimony, some witnesses' testimony, and did not credit others. Well, Your Honor, the judge gave credit to the ex-husband's testimony. First of all, there was a serious question about, in the AOJ's mind, about whether she was, in fact, divorced from the person she married in Turkey. And, Your Honor... Her statement that she was divorced was limited to the following. I was divorced because the Turkish government gave me a passport. There was no evidence presented to me from any court or anything else. Isn't that the record, sir? And the record goes on to say that her divorce was by a clergy person who put his hand on her head and said that she was divorced. This was... And no paper. You have an oral decree of divorce in Turkey. Is that right, sir? Your Honor, this was a religious marriage, and a religious marriage can be dissolved by oral decree of a clergy. Is that right? Yes, it is. Is there evidence of that in the record? No, Your Honor. I'm only... Okay. Question. That was the only issue. But the issue of the hardship... What the board should have done on the hardship should have sent the case back to the immigration judge to develop the record on the air and then decided the issue, as opposed to decide the issue on their own five years later. Thank you, counsel. Thank you. Your time has expired. We'll hear from the government. Please, the court. Barry Pettinato on behalf of the respondent, John Ashcroft. Before I take up the issue of credibility, I want to address the request, essentially, that the case be remanded back to the board so they could send it back to the immigration judge. It's true that the immigration judge in this case did make an error in adjudicating the hardship waiver under 216. However, when it got to the board, the petitioner raised that issue to the board on appeal, and the board on appeal acknowledged that the immigration judge had made a mistake and addressed the hardship factors and essentially adjudicated the waiver at that point. Is there a case law blessing that procedure as distinct from sending it back to the immigration judge in the first instance? Your Honor, at that time, at the time that the board made its decision, it had de novo authority and frequently does things like this. The court may be aware the attorney general has radically made some changes in the board now and they no longer have de novo review authority, except under a very limited set of facts and circumstances. And so at this time, they did have de novo authority and actually corrected the record. So if this happened now, it would be remanded to the IJ for further proceedings? Unless the court determined that, actually what would probably happen in this case is that a three-board member panel can look at it if there's a clear error of law. And here there clearly was because the correct, the immigration judge didn't apply the standard and would correct it on, wouldn't streamline the case, but would probably correct the error through a three-board member panel. But I don't see that there's any harm to the petitioner in this case because if the immigration judge had in fact reviewed the evidence that the board reviewed and came to the same conclusion that the board reviewed and then we had the board just adopting and affirming the board, the IJ's decision, essentially would have the same result, that the board would, the review of the hardship factors would be the same and there would be no consideration of the intervening events that happened in her life between the immigration judge's decision and the board's decision. So simply because the board corrected an error here, I don't think that there's any need for a remand for the immigration judge to consider what happened in the five years since they clearly corrected the error based on the law, the record as it stood before the immigration judge. As to her credibility, I think the court is correct that there's actually nothing in this record that would compel a contrary conclusion by both the immigration judge and the board. Is that the standard? Exactly. This case is being reviewed for substantial evidence and unless there's contrary evidence to the conclusion to find, contrary to what board found, this court has to accept the attorney general's decision in this case. Does the evidence have to compel the contrary conclusion? In other words, if we thought the evidence for her was a little bit better than the evidence for the spouse, but we couldn't say it compelled it, what do we do? Then the court would have to deny the petition and if the standard is that it has to compel it, I mean, and that is somewhere out there, I don't know, 75% of the evidence supports it or whatever that standard actually amounts to. I think what you're talking about, Your Honor, would be a preponderance. It shifts slightly to her favor, but that's not the case here. I mean, I think if the immigration judge did a very fine job in analyzing the case, difficult case, weighing the credibility of all of the witnesses and essentially concluding that of the two major principal witnesses, the ex-husband was the more credible of the two witnesses. And if I could just address the issue of the motive, because I think the immigration judge makes it pretty clear in his decision that he thought Mr. Schuman was not being vindictive or was not there based on a motive to punish her or to retaliate against her. I think the evidence is pretty clear that Mr. Schuman viewed, he wanted to do this thing, he thought it was the right thing to do to try to bring her over here, he intended to have her marry him and start a life together, but it simply just didn't work out that way. And although he was a little frustrated, I think the record indicates that he clearly cared for her, notwithstanding that the relationship, the situation didn't work out, and he didn't come to court with the intent to sort of get back at her or to punish her or whatever. And I think the immigration judge, who was in the position to view Mr. Schuman's demeanor and his testimony, comments in his decision that he didn't see that Mr. Schuman was trying to retaliate. How do you deal with the argument of Petitioner's counsel that at some other point in the record that the husband said he had been told about the rape? I was going to address that. What I wanted to point out is the Petitioner is confusing two different things. The gravamen of her asylum claim was the fact that she was raped at this party, taken from this party and raped by Iranian government officials. Khomeini people. Khomeini people, exactly, that it had happened in the past. What Mr. Schuman eventually said in the course of the hearing was, yes, at some point she did tell me that if she was returned to Iran, she feared that she might, we're talking about in the future, be raped by government officials. And that was all based on what she had told him, the fact that an Iranian woman who was divorced would be stigmatized, and her fear was if she was returned to Iran as a divorced woman, the potential was there that she could be mistreated by Iranian government officials, whatever, and that she might be raped in the future. So we're talking about apples and oranges here. These were two entirely different things. Mr. Schuman was clear throughout the entire course of the hearing that the Petitioner never told him about this alleged rape that took place back in Iran years ago. Is there a country report in the record that tells us in any updated way what the risks to Petitioner are if she's sent back? I don't believe that there's any. I didn't read the country report for that in mind, and I don't remember it ever coming up in the course of the hearing, so I can't point you to something. However, essentially that was never her claim before the immigration judge or the board that she would be feared. As a matter of fact, she disavowed that that was her claim. She said her claim was based on this past rape. So essentially, if that in fact is her real claim, she's waived that because she's had the opportunity to present that in front of the judge and to the board, and she never did. There have been times, I'm sure, when if a person had a substantial connection with the West and they went back to Iran that they would be at some risk, you know, a woman who was westernized. Possibly, Your Honor, but that wasn't the basis of her claim to the board or to the immigration judge or to the board. And I think that just from general reading, the things that I read have improved, although this is not in the record, but just in the sense I think conditions have improved somewhat. It's not on the record. I guess I don't want to hear about it. Right. I mean, I think the court is probably aware of that. But basically, the standard here requires us to affirm unless the record compels the contrary conclusion. Exactly, Your Honor. And just in closing, I think that there's nothing in this record that actually could compel the court, that would require the court to overturn a thoughtful decision of the immigration judge and of the board in conjunction, because in this case, the court is essentially reviewing both the immigration judge's decision and the board's decision, since the board did a number of things, adopted part of the immigration judge's decision, and did de novo review on other parts. So in the absence of any substantial evidence to the contrary, the court must affirm the decision of the board and the immigration judge and deny the petition for review. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both counsel.
judges: Aldisert, Graber, Gould